## In re ORDER OF SPARTA.

### VADAKIN v. CASS et al.

(Circuit Court of Appeals, Third Circuit. May 22, 1917.)

No. 2218.

1. BANKRUPTCY ⟿70—PERSONS WHO MAY BE ADJUDGED BANKRUPTS—UNINCORPORATED "COMPANY."

An unincorporated fraternal beneficial association, having no capital stock and practically no assets, except those derived from assessments paid by members, but issuing to its members benefit certificates payable from the contributions of members, requiring members to pass a medical examination, and whose principal object was beneficial, rather than social, was subject to be adjudged a bankrupt under Bankruptcy Act, July 1, 1898, c. 541, § 4, subd. "b," 30 Stat. 547, as amended by Act June 25, 1910, c. 412, §§ 3, 4, 36 Stat. 839 (Comp. St. 1916, § 9588), providing that any unincorporated company may be adjudged a bankrupt, since the word "company" includes at least any unincorporated association or group of individuals, whose object and purpose are either wholly or chiefly of the same kind as the object and purpose of a moneyed, business, or commercial corporation, which may be adjudged a bankrupt under subdivision "b."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Company.]

2. BANKRUPTCY ⟿88(1)—INVOLUNTARY PROCEEDINGS—UNINCORPORATED COMPANIES.

Congress having permitted a suit in bankruptcy to be brought against an unincorporated company, the proceeding may be brought against such company under its own name, with notice to the proper officials, though it is not a legal entity, and cannot be sued as an association.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 58, 98, 109.]

3. BANKRUPTCY ⟿70—INVOLUNTARY PROCEEDINGS—UNINCORPORATED COMPANIES.

The difficulty of getting at the value of certificates issued by an unincorporated fraternal association, so as to determine at what amount they shall be reckoned in voting for a trustee, is not a valid objection to a bankruptcy proceeding against such association, as the same difficulty would exist in any court that was winding up the order, and a court of bankruptcy has all the machinery of a court of equity, and will not find such difficulty insurmountable.

Petition for Revision of Proceedings of the District Court of the United States for the Eastern District of Pennsylvania, in Bankruptcy; Oliver B. Dickinson, Judge.

In the matter of the Order of Sparta, alleged bankrupt. On petition by Louis A. Vadakin to revise an order (238 Fed. 437) refusing to vacate an adjudication on his application, opposed by Lucy E. Cass and others. Affirmed.

Emanuel Furth, David Bortin, and Jacob Singer, all of Philadelphia, Pa., for appellant.

Francis Chapman, Chas. Hunsicker, William S. Wallace, and Chapman & Chapman, all of Philadelphia, Pa., for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

McPHERSON, Circuit Judge. This is a petition to revise, and brings up the refusal of the District Court to vacate an adjudication and to dismiss the petition in bankruptcy. The facts are as follows:

The Order of Sparta is an unincorporated fraternal beneficial association, organized more than 35 years ago in Philadelphia, and having its principal place of business in that city. We are informed, also, that most of its membership is in the state of Pennsylvania. On November 22, 1916, it made and filed of record an assignment for the benefit of creditors, and on the next day a petition in bankruptcy was filed by the beneficiaries named in three unpaid certificates, each certificate having been issued to a deceased member. On December 4, it answered the petition, admitting insolvency and the making of the assignment, and stating its willingness to be adjudged bankrupt. The Order is governed by a supreme legislative and executive body, called the Great Senate, and the answer stated that this body had declared by formal resolution that the assets could not pay the pending death claims, that the assessments necessary to keep up the beneficiary fund were insufficient to continue the business of the Order successfully, and that no further assessments would be levied, but that business would be abandoned and an assignment made for the benefit of creditors. On the same day the adjudication was entered, and on December 6 Louis Vadakin, another holder of an unpaid certificate, obtained a rule to show cause why the adjudication should not be vacated and the proceedings dismissed, setting forth as the ground that the Bankruptcy Act did not cover the case of such an association. On January 11 the court entered the refusal now complained of.

The question for decision is whether the phrase "any unincorporated company," in clause b of section 4, embraces such an association as the Order of Sparta. Undoubtedly, the Order is unincorporated; is it also such a "company" as the act intends to include? From the record and from several decisions of the Pennsylvania courts concerning this very Order—Algeo v. Fries, 27 Pa. Super. Ct. 157; Schoales v. Sparta, 206 Pa. 11, 55 Atl. 766; and Taylor v. Sparta, 254 Pa. 556, 99 Atl. 157—to which we may properly turn for information and guidance, we collect and condense the following facts concerning the association and the character of its activities:

The Order of Sparta is a fraternal beneficial association whose objects are (1) to unite fraternally men between 21 and 45 years of age, of good moral character, and of sound health in body and mind; and (2) to establish a fund from which, after the death of a member in good standing, certain sums shall be paid to his designated beneficiary. The Order has no capital stock, and the members are not individually liable to pay either the benefit certificates or its other debts, these being payable only out of the treasury. By virtue of the Pennsylvania act of 1893 (P. L. 7), it was not to be affected by any subsequent act of the Legislature, unless fraternal beneficial societies should be expressly named therein. By section 1 of the same act, such associations are described as societies not for profit, but for the sole benefit of the members and their beneficiaries. They are authorized to have subordi-

nate bodies, a ritualistic form of work, a representative form of government, and to provide a fund to pay death and other benefits; the fund and the societies' expenses to be derived from assessments or dues collected from the members, and the benefits to be payable to families, heirs, or relatives, of the members, or to other dependent persons. The purpose of such societies is well known to be twofold—fraternal or social, and beneficial. The Order of Sparta consists of a Great Senate and subordinate senates. The Great Senate is the supreme legislative and governing body; it is authorized to enact and expound all rules regulating the affairs of the Order, to institute subordinate senates, and to have sole control of the beneficiary and other funds. The Order is not an insurance company, and does not do an insurance business; the essential difference between its beneficiary (or so-called insurance) contracts and the policies of regular insurance companies being that its pecuniary benefits are met by assessments paid by the members, these assessments being the chief and practically the only asset of the Order. Except that beneficial societies must file reports, it is not subject to the supervision of the state insurance department. Section 4 of the act of 1893 (P. L. 9). Its certificates are not contracts of indemnity against loss, but are payable only from the contributions of members. It does not and cannot issue a paid-up policy; and it is not obliged to maintain an insurance reserve. Its assessment rates are not swollen by an item for expenses, these being paid out of a general fund, which is made up of initiation fees, interest upon deposits, fines, certain dues of $1 per year, and money paid by subordinate senates for supplies. Only a small proportion, about 2 per cent., of the monthly beneficiary assessments, may be, and no doubt is, used for the same purpose. The annual dues of each member are $5, from which $1 is paid to the Great Senate; the remainder, with some initiation fees, being used to pay the expenses of the subordinate senates. Members enter the Order through the subordinate senates; the applicant submitting to a medical examination and signing a preliminary writing wherein he agrees that, if a beneficiary certificate be issued, he will pay promptly all assessments lawfully made upon him by the Great Senate, and in default of payment that the certificate shall be null and void, and no claim thereon shall be made by any person. If he pass the medical examination, and be elected and initiated, the applicant receives a beneficiary certificate which follows the terms of the preliminary writing, and binds the Order to pay a specified sum upon receiving proof of death—the money to be paid to the person designated in the certificate, and to be payable as soon as the money is in the treasury of the fund. The applicant accepts in writing the terms and conditions of the certificate and agrees to perform his own covenants and to pay all assessments, agreeing further that if he fail so to do no claim or demand shall be made on the certificate.

[1] If each word of the phrase in question—"any unincorporated company"—be taken singly, and be given what may be called its ordinary and popular meaning, there would be little hope of successful attack on the adjudication. But no doubt the argument may fairly be

made that the phrase should be considered as a whole, and also in the light of the subject-matter of the act, and that, when thus considered, the word "company" may have been intended to carry a more restricted meaning. Accordingly we have taken the argument into account, but we still see no sufficient reason for believing that the Order of Sparta is outside even the narrower meaning of the word. As amended in 1910, section 4 provides that the following three classes or groups may be adjudged bankrupt in adverse proceedings: (1) Any natural person, with certain exceptions; (2) any unincorporated company; (3) any moneyed, business, or commercial corporation, with certain exceptions—partnerships being separately dealt with in section 5 (Comp. St. 1916, § 9589). It seems clear, therefore, that an unincorporated group of individuals, not a partnership, is (speaking broadly) referred to as a "company," and is to be found somewhere between a natural person and a corporation; but, as these groups are of many kinds, the question remains whether every kind is a "company" in the precise statutory sense, even if, e. g., its object should be wholly or chiefly charitable or educational or social. We shall not attempt to answer this question without qualification; the case before us does not call for such an answer, and we think it sufficient to consider one situation at a time. But in our opinion this much may be safely and reasonably said: Whatever may be the full scope of the word "company," it does include at least any unincorporated association or group of individuals whose object and purpose are either wholly or chiefly of the same kind as the object and purpose of a moneyed business, or commercial corporation. A corporation is also a group of individuals, and the fact that one group has a charter, while another group with an identical object has none, hardly furnishes a sufficient reason for exempting the latter from the scope of the act. We do not say that Congress might not in plain language exempt one group, and not the other; but it seems sound to conclude that, if the meaning of the act be in doubt, we may properly resolve the doubt in favor of the meaning that the unincorporated group is at least as inclusive as the group of corporations. In a word, if "any unincorporated company" includes at least a group of individuals doing "business" in the same sense as business when carried on by a corporation, then such a company is certainly subject to the act. We repeat that we do not attempt to decide how wide the meaning of "company" may be; we simply hold that in any event it is wide enough to include a "business" company without a charter.

Is the Order of Sparta a business company? About this we have little doubt. Unquestionably it has social features also; our information about them is scanty, but so far as this record discloses they are subordinate and incidental. The chief object of the order is beneficial. The members desire first of all to make pecuniary provision for the future, and the social side of the Order takes a secondary, although no doubt, a useful, place. During its life the Order collected and paid out large sums of money—in 1915 its outstanding certificates amounted to nearly $5,000,000, and its assets to $167,000 (Taylor v. Sparta, 254 Pa. 557, 99 Atl. 157)—and, as we have seen an application

for membership is so nearly like an application for a regular policy of insurance as to justify the conclusion that the pecuniary feature of the transaction was by far the most important. We have not found any decision directly in point, but the following cases have some illustrative bearing: In re Fulton Club (D. C.) 113 Fed. 997; In re Hercules Atkin Co. (D. C.) 133 Fed. 813; Burkhart v. Bank (D. C.) 137 Fed. 958; In re Seaboard Underwriters (D. C.) 137 Fed. 987; Cleage v. Laidley (C. C. A. 8) 149 Fed. 346, 79 C. C. A. 284; In re Grand Lodge (D. C.) 232 Fed. 199; In re Associated Trust (D. C.) 222 Fed. 1012, 34 Am. Bankr. R. 851.

[2, 3] Two minor objections may be briefly noticed. The first is that the order is not a legal entity, and cannot be sued qua order. To this it is enough to answer that, as Congress has permitted a suit in bankruptcy to be brought against such a company, no reason is apparent why the proceeding should not bring the company into court under its own name—of course with notice to the proper officials. The other objection is the difficulty of getting at the value of the certificates, so as to determine at what amount they shall be reckoned in voting for a trustee. But the same difficulty would exist in any court that was winding up the order, and a court of bankruptcy has all the machinery of a court of equity, and is not likely to find the difficulty insurmountable.

The appeal is dismissed, at the cost of the appellant, and, on the petition to revise, the order is affirmed.