## GALLAGHER et al. v. HANNIGAN.

### McISAAC v. SAME.

(Circuit Court of Appeals, First Circuit. May 8, 1925.)

Nos. 1761, 1762.

1. Bankruptcy ☞302(1)—Complaint in trustee's action to recover assets fraudulently conveyed must allege substantial case within jurisdiction of act.

Complaint, in trustee's action to recover assets of bankrupt fraudulently conveyed, must contain allegations of a substantial case within jurisdiction of Bankruptcy Act (Comp. St. §§ 9585–9656), in order to give jurisdiction to federal court.

**2. Bankruptcy ⊸302(1)—Complaint, in trustee's action to recover assets of bankrupt fraudulently conveyed, held not defective.**

Complaint, in action by trustee of bankrupt business trust to recover property fraudulently conveyed, which alleged payment of money to defendants by trustees named in trust agreement, *held* not defective for failure to aver payment by bankrupt, since it could only act through trustees.

**3. Bankruptcy ⊸70—Company organized as trust held properly adjudicated as an "unincorporated company," rather than as partnership.**

Company, organized under trust agreement which provided for its control by board of directors and contained provision against personal liability of trustees, directors, or holders of certificates and units of stock, *held* properly adjudicated a bankrupt as an unincorporated company under Bankruptcy Act, § 4b (Comp. St. § 9588), rather than partnership, particularly in view of G. L. Mass. c. 182, recognizing such concerns as voluntary associations equivalent' to "unincorporated companies" within Bankruptcy Act.

**4. Bankruptcy ⊸467 — Appellate court held not bound by findings of district court.**

On appeal in suits by trustee in bankruptcy to recover property of bankrupt fraudulently conveyed, Circuit Court of Appeals is not bound by findings of district court.

**5. Bankruptcy ⊸178(2)—Payments made to attorneys from assets of bankrupt concern held recoverable as fraudulent conveyances of bankrupt's assets.**

Where, within four months before bankruptcy, trustees of company organized under trust agreement for purpose of engaging in financial operations, out of its assets, paid attorneys substantial sums for services to be rendered in any criminal or other matters which might arise against them' personally when attorneys knew source of such funds; trustee in bankruptcy could recover such payments under Bankruptcy Act, §§ 67e and 70e (Comp. St. §§ 9651, 9654).

Bingham, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Two suits by John E. Hannigan, trustee in bankruptcy of the Old Colony Foreign Exchange Company, one against Robert Gallagher and another, and the other against Daniel V. McIsaac. Judgment for plaintiff in each case, and defendants appeal. Affirmed.

Lowell A. Mayberry, of Boston, Mass., for appellants.

John E. Hannigan, of Boston, Mass. (Harold F. Hathaway, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. These cases are appeals from a final decree of the District Court of the United States for the District of Massachusetts. The same questions are involved in both and they have been argued together. In each a bill in equity was filed by John E. Hannigan, as trustee in bankruptcy of the Old Colony Foreign Exchange Company, adjudged a bankrupt as an unincorporated company October 11, 1920, upon an involuntary petition filed August 16, 1920, in which he seeks to recover from the defendants money paid to them by the bankrupt, alleged to have been fraudulent transfers.

Raymond M. Meyers, Charles M. Brightwell, and Gunner R. A. Lindblad executed a written instrument on July 8, 1920, which provided in very broad terms for the carrying on of different lines of business, including the purchase of foreign merchandise and foreign exchange under the name of the Old Colony Foreign Exchange Company and that the title to all the property which it acquired should be in them as trustees or their successors.

The said Meyers, Brightwell, and Lindblad were named therein as trustees, and it was declared that the association contemplated a capital stock of $1,000,000, represented by 10,000 units of the par value of $100 each; that annual and special meetings of the unit holders were to be held; that the trustees' sole duty and power should be to hold the title to the property of the association or trust; that a board of directors should be elected who should have and exercise exclusive management and control of the business of the association; that there should be no personal liability on the part of the trustees or on the part of the board of directors or on the part of the holders of the certificates and units in said trust; and that the property of the trust alone should be held liable for obligations incurred by the board of directors or trustees.

This instrument was filed under the provisions of the General Laws of Massachusetts, chap. 182, § 2, in the office of the Commissioner of Corporations. No business of the kind described in it was ever done and no certificates for the ownership of any units in the property of the association were ever issued to any parties except to the three trustees. No directors were ever elected and no record of trustee meetings or any other meetings was ever kept.

The association opened an office at 89 State street, Boston, Mass., and began to issue notes signed by the Old Colony Foreign Exchange Company, by R. M. Meyers, manager, in which it promised to pay to parties who might intrust their money to it the principal, with 50 per cent. interest, in 90 days. A little later it issued what was termed a "debenture," which promised the same return to the holders and concluded with this statement:

"The trustees, under a declaration of trust filed in the office of the Commissioner of Corporations of Massachusetts, herein designated as the Old Colony Foreign Exchange Company, as such trustees and not individually, have caused this debenture to be signed in their behalf by their treasurer and secretary.

"Old Colony Foreign Exchange Company,

"C. M. Brightwell, Treasurer.

"R. M. Meyers, Secretary."

The issue of notes began July 23, 1920, and of debentures August 1, 1920, and was continued until August 13, 1920, when the business of the Old Colony Foreign Exchange Company was stopped by the commonwealth of Massachusetts.

It took in from the issue of notes and debentures $383,704.50, from about 1,400 persons. An audit of its affairs disclosed that no investment was ever made by it and no purchases, outside of office furniture; that it had done no business except to borrow money upon its notes and debentures; that notes to the amount of $84,602.50 had been redeemed; that it had paid in the way of commissions to agents $39,095.45, $5,655.75 to two other parties, and certain amounts to the attorneys who are named as defendants; that from all the records which could be found, the balance on hand should have been $223,119.36, but that the sum of $164,559.98 was all that could be found, leaving a balance of $58,559.38 unaccounted for.

On August 12, 1920, investors, apparently alarmed by the disclosures in the daily papers in regard to the fraudulent practices of Charles Ponzi, which appear to have been similar if not substantially the same as those of the Old Colony Foreign Exchange Company, started a run on the latter, which was continued until about 2 o'clock in the afternoon of the next day, when Charles M. Brightwell and Raymond M. Meyers were arrested on warrants issued by the municipal court of the city of Boston. Lindblad was then out of the country.

The sum of $10,000 was paid to defendants Dennison and Gallagher as a retainer; $5,000 on the morning of August 13, 1920,

and $5,000 about noon of that day. The District Court has found that these payments were made by Meyers from the money obtained by the Old Colony Foreign Exchange Company by the issue of notes and so-called debentures; that McIsaac was retained as general counsel about August 2, 1920, and the sum of $4,500, from the same source, was paid to him; that defendant Wyman received the sum of $2,500 for past legal services; and that this payment to him constituted an illegal preference under the Bankruptcy Act.

The defendants filed a motion to dismiss, which was denied by Judge Morris in a careful and elaborate statement, expressing views with most of which we find ourselves in accord.

The case was later tried upon its merits before Judge Lowell, who adopted Judge Morris' views as to jurisdiction and on the main questions involved and then, on all the evidence, found as above noted.

The case comes here on 75 assignments of error, some of which relate to the denial of the motion to dismiss because of lack of jurisdiction, and the remainder to the findings of Judge Lowell upon the merits and his refusal to give certain rulings and make certain findings which were requested. In support of the motion to dismiss, it was urged that the complaint was defective upon its face, because it did not allege that the bankrupt, the Old Colony Foreign Exchange Company, had made the payments which, it is alleged, were fraudulent; that as these were plenary actions, the trustee could not maintain them in a federal court without the consent of the defendants, given in accordance with section 23b of the Bankruptcy Act (Comp. St. § 9607).

[1] It is true that the complaint must contain an allegation of a substantial case within the jurisdiction of the Bankruptcy Act. See Flanders v. Coleman, 250 U. S. 223, at page 227, 39 S. Ct. 472, 473 (63 L. Ed. 948), where the court said, speaking of the allegations of a bill:

"If there be enough of substance in them to require the court to hear and determine the cause, then jurisdiction should have been entertained."

[2] The bill of complaint, after alleging the facts hereinbefore stated, alleges that while the run upon the Old Colony Foreign Exchange Company was going on, Brightwell and Meyers paid to the defendants, Dennison and Gallagher, "the sum of $5,000 from the money aforesaid of the Old Colony Foreign Exchange Company, and

later on, on the same day, paid them another sum of $5,000 from the money of the Old Colony Foreign Exchange Company, making total payments of $10,000 to said Gallagher and Dennison for services to be rendered by said Dennison and Gallagher as counsel in any criminal or other matters that might arise against them personally."

It is apparent from the allegations of the bill that the only parties through whom the Old Colony Foreign Exchange Company could act—Lindblad being out of the country—were Brightwell and Meyers.

While in fact this association was a mere sham and pretense, intended to gain the confidence of the public in order to defraud it, yet, so far as it had any status and could perform any acts, it could only do so through them, and their acts were its acts. We think, therefore, that the District Court was right in denying the motion to dismiss, and holding that the District Court had jurisdiction.

The gist of the defendants' contentions, which are the basis of the other assignments of error, is, in substance, that the Old Colony Foreign Exchange Company was a partnership, and that it should not have been adjudicated a bankrupt as an unincorporated company; and therefore that the plaintiff has no title to its assets; that the money derived from the buyers of notes and its debentures was that of Brightwell, Meyers, and Lindblad as partners, which they were free to use as they chose, including its use in employing the defendants to defend them from alleged crime; that, as the plaintiff never got title to the assets of the Old Colony Foreign Exchange Company, he cannot maintain an action in either case.

[3] We concur with the two learned District Judges in rejecting this proposition and its results, and hold that the bankrupt was an "unincorporated company," within the meaning of section 4b of the Bankruptcy Act (Comp. St. § 9588); and that the plaintiff, as trustee, has title to all the property of the Old Colony Foreign Exchange Company, including that which was fraudulently transferred by it.

In the following cases in the federal courts an association similar to the Old Colony Foreign Exchange Company has been held to be an unincorporated company and subject to adjudication as a bankrupt: In re Seaboard Fire Underwriters (D. C.) 137 F. 987; In re Hercules Atkin Company (D. C.) 133 F. 813; In re Associated Trust (D. C.) 222 F. 1012; In re Parker et al. (D. C.) 275 F. 868; In re Order of Sparta, 242 F. 235, 155 C. C. A. 75; In re Tidewater Coal Exchange (C. C. A.) 280 F. 638.

Undoubtedly, such associations, when fully organized as the declaration of trust in this case contemplated, are held by the Massachusetts courts to be, for certain narrowly limited purposes, partnerships. But it does not at all follow that under federal law they cannot be properly adjudicated bankrupt as unincorporated companies. We think the following statement from the opinion of the court in Re Associated Trust, supra, applies with greater force to the Old Colony Foreign Exchange Company than to the association with which the court was there dealing.

"It is impossible to conceive an organization to which the name 'unincorporated company' could be more appropriately applied than to a concern organized as the declaration of trust in this case contemplated."

The Massachusetts statutes themselves recognize such concerns as voluntary associations, a term which, for present purposes at least, is equivalent to "unincorporated companies." G. L. chap. 182; Malley v. Howard (C. C. A.) 281 F. 363, 371.

Section 6 of this chapter is as follows:

"Sec. 6. An association may be sued in an action at law for debts and other obligations or liabilities contracted or incurred by the trustees, or by the duly authorized agents of such trustees, or by any duly authorized officer of the association, in the performance of their respective duties under such written instruments or declarations of trust, and for any damages to persons or property resulting from the negligence of such trustees, agents or officers acting in the performance of their respective duties, and its property shall be subject to attachment and execution in like manner as if it were a corporation, and service of process upon one of the trustees shall be sufficient."

The Old Colony Foreign Exchange Company and most of these associations limit their contractual liabilities to the res of the trust estate, thus seeking and generally attaining, nearly if not quite all, the limited liability of a corporation. Hussey v. Arnold, 185 Mass. 202, 70 N. E. 87; McCarthy v. Parker, 243 Mass. 465, 138 N. E. 8. Plainly, the "property" referred to in G. L. Mass. chap. 182, § 6, is the property of the association—derived from its stockholders, its creditors, or in the usual course of its business. It does not mean the property of its shareholders as partners.

The trust estate, so far as its assets are concerned under Massachusetts law, is treat-

ed as an entity, as is a corporation. The fact, if it be a fact, that such associations may be partnerships as to creditors not charged with notice that the officers thereof are required to limit their contractual undertakings as to the res of the trust estate, is no reason for holding that bankruptcy may not be invoked in order to provide equality of treatment of all creditors of this separate entity. Compare Horgan v. Morgan, 233 Mass. 381, 124 N. E. 32; Frost v. Thompson, 219 Mass. 360, 366, 370, 106 N. E. 1009; Neville v. Gifford, 242 Mass. 124, 128, 136 N. E. 160.

Moreover, a partnership itself is, in bankruptcy, treated, for certain purposes, as a separate entity. In Francis v. McNeal, 228 U. S. 695, 700, 33 S. Ct. 701, 702 (57 L. Ed. 1029, L. R. A. 1915E, 706), Mr. Justice Holmes, referring to the partnership provisions in the Bankruptcy Act, says:

"No doubt these clauses taken together recognize the firm as an entity for certain purposes, the most important of which, after all, is the old rule as to the prior claim of partnership debts on partnership assets and that of individual debts upon the individual estate."

This doctrine is quoted and applied in Re Samuels et al., 215 F. 845, 132 C. C. A. 187.

The reason, then, why a partnership cannot be adjudicated, bankrupt unless all of its partners are insolvent, grows, not out of the words of the Bankruptcy Statute, put out of the general principles of law. There cannot be equality of treatment unless the court extends its jurisdiction to the assets which must be marshaled for the purpose of distribution. But these reasons do not at all apply to voluntary associations or unincorporated companies; for in these cases the shareholders, even if partners inter sese (Flint v. Codman, 247 Mass. 463, 471, 142 N. E. 256), or as to the rare creditor not charged with knowledge of the limited powers of their officers (Neville v. Gifford, supra), are not liable to the ordinary creditors of the association. As to most, generally as to all creditors, the res or trust estate stands exactly like the assets of a corporation. It is the sole resort of creditors. The shareholders and officers of these associations stand outside the scope of the bankruptcy liquidation, just as do the officers and stockholders of an ordinary corporation. Their individual assets are not liable for the association's debts. The Bankruptcy Court has, therefore, no occasion to extend its jurisdiction over these shareholders.

This is, in effect, but an elaboration of what Judge Morton held in Re Associated Trust, supra, where he said as to the words "unincorporated company," that "company" "would seem to imply an association of individuals, not partners, carrying on business under a distinct name, and having common rights inter se, but having no individual ownership in the joint property, no individual control over the business in which their joint capital is embarked, and no direct individual liability for the company's debts."

The words "no direct individual liability for the company's debts" furnish the main reason for the conclusion that such associations, although for some purposes partnerships, under the Massachusetts holdings, are not to be dealt with as partnerships under the Bankruptcy Act, where an equal distribution of their assets among their creditors is the controlling purpose.

The Old Colony Foreign Exchange Company had not become, like the voluntary associations dealt with by the Supreme Court of Massachusetts in the cases cited upon the defendants' brief, a completely organized trust with a large number of certificate or unit holders who managed and controlled the property and business through trustees who were their agents. The objects of the trust were never undertaken. Neither foreign merchandise nor foreign exchange was ever purchased.

It is evident that the company had no resources with which to meet the obligations which it was incurring, and that it could only depend upon doing so by obtaining further victims of its swindling scheme.

The District Court has found that the defendants, Gallagher and Dennison, knew that the money which was paid them was not that of Brightwell and Meyers, but of the Old Colony Foreign Exchange Company; that it would be an insult to their intelligence to suppose that they thought that the money was to be used for any purpose connected with the business of the Old Colony Foreign Exchange Company.

The District Court bases its decree upon the misappropriation of the property of the Old Colony Foreign Exchange Company. While there is ample evidence to sustain its finding that the defendants knew that the money paid to them was not that of Brightwell and Meyers, it is also sufficient to authorize us to find that they knew that it was money of the Old Colony Foreign Exchange Company, and that they knew how this money had been obtained.

[4, 5] Upon this appeal, we are not bound

by the findings of the District Court, but can reach such conclusions as we feel are warranted by the evidence.

It is evident that the money paid to the defendants was not paid to them for any purpose for which it was intrusted to the Old Colony Foreign Exchange Company by the holders of its notes and debentures, but was diverted to a purpose entirely foreign to the purposes for which it had declared itself to be organized and for which these so-called investors had turned over their money to it; and that this was within the knowledge of all these defendants. It was a misappropriation, therefore, by the Old Colony Foreign Exchange Company and a diversion of the money received from its gullible victims to a purpose entirely foreign to those for which it had persuaded them to intrust it with their money; and any creditor of the bankrupt could recover money which was so fraudulently transferred and diverted from the purpose of the trust with the knowledge of those who received it. Therefore, the trustee in bankruptcy may, under section 70e of the Bankruptcy Act (Comp. St. § 9654), maintain an action for its recovery. See Flanders v. Coleman, 250 U. S. 223, 39 S. Ct. 472, 63 L. Ed. 948. We think also that he could maintain an action under section 67e of the Bankruptcy Act (Comp. St. § 9651), as these fraudulent transfers were made within four months of the filing of the petition in bankruptcy, and their obviously necessary effect was to "hinder, delay or defraud creditors."

In Dean v. Davis, 242 U. S. 438, 37 S. Ct. 130, 61 L. Ed. 419, the court said:

"A transfer, the intent (or obviously necessary effect) of which is to deprive creditors of the benefits sought to be secured by the Bankruptcy Act 'hinders, delays or defrauds creditors' within the meaning of section 67e."

Park v. Cameron, 237 U. S. 616, 35 S. Ct. 719, 59 L. Ed. 1147, is relied upon by the defendants in support of their contention that, as the payments made by Brightwell and Meyers were not the acts of the bankrupt, but their individual acts, this did not constitute transfers by the bankrupt. In that case, however, the declaration alleged that the corporation did not authorize the payments that had been made by the defendants, or ratify them, and that the defendants knew this; and the court held that there was no allegation that the corporation had made any transfers, but only that certain of its officers by false pretenses had withdrawn and misappropriated its funds.

No such distinction can be made between Brightwell and Meyers and the Old Colony Foreign Exchange Company as could be made between the officers and the corporation in Park v. Cameron, supra; nor are there any allegations in the bills in these cases that the Old Colony Foreign Exchange Company had never authorized or ratified these payments, and the evidence discloses that they were made by the only parties who constituted the Old Colony Foreign Exchange Company or through whom it could act.

The decree of the District Court is affirmed in each case, with costs to the appellee in this court.

BINGHAM, Circuit Judge (dissenting). These are proceedings brought by the trustee in bankruptcy of the Old Colony Foreign Exchange Company (which has been adjudicated a bankrupt as an unincorporated company) to recover certain funds alleged, proved, and found by the District Court to have been the funds of the Old Colony Foreign Exchange Company which Brightwell and Meyers misappropriated and paid to the defendants for legal services to be rendered Brightwell and Meyers individually in the trial of certain indictments.

In paragraph 7 of the bill of complaint it is alleged that the Old Colony Foreign Exchange Company received $383,704.50 for notes which it had sold and issued, and that "this money was the property of the Old Colony Foreign Exchange Company as between itself and said Brightwell and Meyers." In paragraph 8 of the complaint it is alleged that "on August 12, while said run was in process, the said Brightwell and Meyers paid to the defendants Dennison and Gallagher the sum of $5,000 from the money aforesaid of the Old Colony Foreign Exchange Company, and later on, on the same day, paid them another sum of $5,000 from the money of the Old Colony Foreign Exchange Company, making total payments of $10,000 to said Gallagher and Dennison for services to be rendered by said Dennison and Gallagher as counsel in any criminal or other matters that might arise against them personally." In paragraph 10 there is a like allegation with reference to payments by Brightwell and Meyers from the money of the Old Colony Foreign Exchange Company to McIsaac, namely, that it was paid to him by Brightwell and Meyers as a retainer in any criminal proceedings that might be instituted against them as individuals.

In the course of the trial the court stated the issue to be tried as follows:

"The question is, Had Brightwell and Meyers, or whatever their names were, any right to use the money of the Foreign Exchange to further their own interest in defending themselves? They might have been angels of purity, and so found by the court, but that wouldn't alter the question of whether they had any right to use those funds, or any of them."

Again, the District Court said:

"It is rather my idea—I don't say I have decided it—that these people had no right to use this money for their own personal uses even though those uses might be most exemplary. In other words, if they wanted to found a foundling hospital they couldn't do it. It wasn't their money."

There was evidence that Brightwell and Meyers took the money from the Old Colony Foreign Exchange Company and paid it to Dennison, Gallagher, and McIsaac to compensate them for services to be rendered in defending them individually in certain criminal prosecutions and not for services to be rendered the company, and that the defendants knew or had reason to believe that the money which they received had been taken by Brightwell and Meyers from the funds of the Old Colony Foreign Exchange Company. The District Court found that the defendants Dennison, Gallagher, and McIsaac, "knew that the money was not that of Brightwell and Meyers, but came from the Old Colony Foreign Exchange Company," and in the course of its opinion said: "It was contended that the defendants could keep the money as a fee given by a bankrupt for professional advice in the case of bankruptcy. I find that the money was not given for this purpose." He also found:

"The law of the case is simple. As to the defendants Dennison, Gallagher, and McIsaac, money of the company was given them for purposes unconnected with the business of the company, and was a fraudulent transfer, which may be recovered by the trustee in bankruptcy."

The defendants contend that, on the allegations of the bill and the findings of the District Court, the District Court as a federal court, or a court of bankruptcy, was without jurisdiction. There was no diversity of citizenship on which its jurisdiction as a federal court could be based and the defendants never consented to be sued in the District Court.

Section 23b of the Bankruptcy Act (Comp. St. § 9607) provides:

"23b. Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant, except suits for the recovery of property under section sixty, subdivision b; section sixty-seven, subdivision e; and section 70, subdivision e."

Section 60, subdivision b (section 9644), relates to preferences and can have nothing to do with this case as the defendants were not creditors of the bankrupt association. Section 67, subdivision e (section 9651), reads:

"67e. That all conveyances, transfers, assignments, or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned, or incumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors. And all conveyances, transfers, or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the state, territory, or district in which such property is situate, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt. For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

And section 70, subdivision e (section 9654), reads:

"70e. The trustee may avoid any transfer

by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a bona fide holder for value. For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

To give the District Court, as a court of bankruptcy, jurisdiction under section 67e or 70e it is necessary that the transfers complained of in these cases should have been made by the bankrupt, the Old Colony Foreign Exchange Company, to the defendants. But the allegations, proofs, and findings in these cases are to the effect that the transfers were not made by the bankrupt but were made by Brightwell and Meyers from the funds of the Old Colony Foreign Exchange Company, which Brightwell and Meyers misappropriated and devoted to their own private uses. In the opinion of the court, my associates, in order to bring the case within the provisions of 67e and 70e, have ignored the findings of the District Judge based on the allegations of the bill and the evidence in the case, and have held that Brightwell and Meyers, in misappropriating the funds of the Old Colony Foreign Exchange Company and applying them for their own benefit, were acting as agents of the Old Colony Foreign Exchange Company and for its benefit. But it is evident and does not call for much discussion that where officers of a corporation or association misappropriate its funds and apply them to their own uses, they cannot reasonably be found in so doing to be acting as agents of the corporation or association whose funds they have misappropriated. Then again, Brightwell and Meyers having misappropriated the funds of the Old Colony Foreign Exchange Company and devoted them to their own uses, it cannot be found that the Old Colony Foreign Exchange Company transferred those funds in fraud of its creditors. As no transfer was made by the Old Colony Foreign Exchange Company or any one authorized by it to make a transfer, it is plain that these proceedings should have been dismissed in the District Court for want of jurisdiction, the same as was done in Park v. Cameron, 237 U. S. 616, 35 S. Ct. 719, 59 L. Ed. 1147.

Although the District Court as a federal court or as a court of bankruptcy was without jurisdiction in these cases, it does not follow that on the facts here found the plaintiff has not a right of action. On the contrary, I am of the opinion that he has a right of action, but must enforce it in a state court that has jurisdiction of the subject-matter and of the parties. The finding of the District Court that Brightwell and Meyers misappropriated the funds of the Old Colony Foreign Exchange Company, and that the defendants received them knowing that they were the funds of the Old Colony Foreign Exchange Company, and that Brightwell and Meyers had no right to use them for their own benefit, establishes a common-law right, which may be enforced in the proper forum.