In re ASSOCIATED CEMETERY MAN-
AGEMENT, INC., EMPLOYEES PROF-
IT SHARING TRUST, an Express
Trust.

No. 23092.

United States District Court
W. D. Missouri, W. D.
June 16, 1958.

Robert L. Jackson, Kansas City, Mo., for bankrupt.

Oscar S. Brewer, William Coleman Branton, Kansas City, Mo., for interveners.

Wilbur L. Pollard, Kansas City, Mo., for intervening participants and beneficiaries of the trust.

RIDGE, District Judge.

On June 3, 1958, six (6) of the eleven (11) present Trustees of Associated Cemetery Management, Inc. Employees Profit Sharing Trust (hereinafter called "Trust") filed a voluntary petition in bankruptcy in this Court, praying that the above entity be declared a bankrupt. There then appearing to be no opposing interest to the granting of the prayer of that petition, an order was entered adjudicating the above entity a bankrupt and referring the proceedings to the Referee in Bankruptcy. Now, four (4) Trustees not joining in the above-mentioned petition have, by leave of Court, filed an intervening petition praying that the order of adjudication be set aside, and that the voluntary petition for adjudication of the above entity as a bankrupt be dismissed. Thirty-eight (38) other persons asserting rights as "participants" in the Trust Estate involved have, by leave of Court, jointly filed a similar intervening petition.

Tersely stated, the chief attacks directed by interveners at the voluntary petition and order of adjudication made thereon, are premised in the proposition that the "Trust" is not a "corporation", "person", or "moneyed business" subject to adjudication as a voluntary bankrupt within either the ambit of Section 1(8) or 4 subs. a, b of the Bankruptcy Act (11 U.S.C.A. §§ 1(8), 22, subs. a, b). That if the above entity is held to be such, the Trustees filing the voluntary petition had no power, right or authority under the Trust Agreement to petition this Court that the "Trust" be declared a bankrupt. Other grounds assigned in the intervening petitions need not be considered in light of the conclusions hereinafter reached.

The historical background of Associated Cemetery Management, Inc. Employee Profit Sharing Trust is intricate and involved, hard to state in any reasonable space and difficult to understand, because of the many perplexing and entangling arrangements affecting the trust estate and the relationship of the Trustees to some seventeen (17) corporations operating cemeteries in a number of states. Because of an apparent urgency for an early disposition of the interventions here allowed, and to keep this memorandum within reasonable bounds, we do not undertake to make any extended statement on that subject. However, to the end that a reviewing court may have a modicum of light regarding that matter, leave will be granted to the parties to make any memorandum filed in support and opposition to the intervening petitions a part of the record on appeal, so that the record may "truly [disclose] what occurred in the district court." Rule 75(h), F.R. Civ.P., 28 U.S.C.A.

The "Trust" in question was created by written agreement between Associ-

ated Cemetery Management, Inc. (hereinafter called "ACMI") and fifteen (15) individuals named as "Parties of the Second Part" who by that instrument are designated "Trustees." The expressed purpose of the Trust is stated to be the "establishment of a profit sharing trust for the employees" of ACMI. It would appear, however, from the record made in certain state court litigation that the "Trust" as administered by the Trustees has deviated from its expressed purpose, to say the least. As a consequence, a state court Receiver is now in charge of the assets of the Trust. Be that as it may, we find our jurisdiction over the "person" of "the legal entity resulting from the trust" (Art. I, 10) to be measured by the instrument creating that entity and the purpose avowed for the Trust therein. When so considered, we find that we are here concerned with a simple, private trust established for certain designated individuals, or class of persons, known, or capable of identification, by the terms of the instrument creating the Trust. (Art. II.) According to the trust instrument, ACMI was, from time to time, to make certain contributions to the trust fund. (Art. III.) All funds received by the Trustees, together with all income, profits, or increments thereon are required to be registered in the name of the Trust, but ownership thereof is vested in the Trustees. (Art. VII(a)). Those who may participate in the trust fund are identified in Art. IV of the Trust Agreement; and the manner and mode the benefits are to be distributed to them is set forth in Art. V. Suffice to say that notwithstanding the provisions of Art. IV(8) to the effect that the Trustees "shall distribute to each Participant—Current Participation Certificates" if any is allocable to a "Participant", by Art. X it is specifically provided:

"Subject to the provisions of paragraph 4 of Article V hereof, no Participant or Beneficiary' shall, under any circumstances, receive anything of present exchangeable value from the Trust or from the Company, in anticipation of or prior to the actual distribution of his interest herein, in accordance with the terms of the Trust Agreement; and no Participant or Beneficiary shall, under any circumstances, exercise any control over the use and disposition of the Trust, or any part thereof. No deposit in trust hereunder shall be made by any Participant. All interest in said Trust and in the separate funds, if any, maintained hereunder, vested in each Participant and/or Beneficiary, shall be subject to all the terms, trusts and provisions hereof, and shall be non-assignable and non-transferable, and none of them shall have any right to anticipate, pledge, hypothecate or create any lien upon said interest. Neither shall said interest be subject nor liable for the debts or defaults of the Participant or Beneficiary, nor shall any involuntary assignment thereof be possible by operation of law."

The trust instrument provides that fifteen (15) Trustees elected in accordance with the provisions of Art. VIII are to administer the Trust. "Nevertheless, in the event of and during any vacancy the remaining Trustees shall have and shall be entitled to exercise all powers of the Trustees discretionary or otherwise." (Art. VIII (4)). By subsection 7 of Art. VII, it is provided:

"The decision of the majority of the Trustees from time to time acting hereunder shall control in all matters. It shall not be necessary for the Trustees formally to hold meetings but any action of the Trustees reduced to writing and signed by a majority of them shall be as effectual as though formal meetings were held by the Trustees, provided that all such Trustees shall have notice of such action."

Finally, by Art. XIV(3) it is provided that the trust "agreement shall be construed with and under the laws of the State of Missouri, and all rights of

Participants shall vest in accordance with the laws of such state."

■■ In light of the foregoing, we shall first consider the point raised by interveners as to the power of the six (6) Trustees to join in the voluntary petition for adjudication to act on behalf of the Trust. That seems to be a "horse that is easily curried" if the entity here adjudicated a bankrupt is a "person" within the meaning of the Bankruptcy Act. "The general rule is that when the administration of a trust is vested in co-trustees, they all form but one collective trustee, and they must exercise jointly all those powers that call for their discretion and judgment, unless the trust instrument or declaration authorizes an apportionment of powers." 54 Am.Jur., p. 235. Here, the trust instrument provides that "(T)he decision of the majority of the Trustees from time to time acting hereunder shall control in all matters." (Art. VII, 5.)

That provision of the trust instrument, coupled with the right of "remaining trustees—to exercise all powers—discretionary or otherwise" (Art. VIII, 4) in the event of a vacancy in their number, and that it is not "necessary (that) the Trustees formally hold meetings but any action of the Trustees reduced to writing and signed by a majority of them shall be as effectual as though formal meetings were held" is, we think, sufficient authority for the majority of the Trustees existing at any given time to act for and on behalf of the trust estate. Contemporaneously with the filing of the voluntary petition for order of adjudication, the remaining Trustees were given "notice of such action." It is our opinion that the notice so given satisfies the requirements of the trust instrument in respect to the above subject.

■ Regardless, the question remains as to whether the "entity" here adjudicated a bankrupt is a "person" or corporation, within the Bankruptcy Act, and subject to that action by this Court. The verified petition for adjudication alleges that the "Trust" is a moneyed business or commercial corporation, not possessed by individuals or partnerships and that the "business conducted by the Trustees is unincorporated and is one wherein beneficial interests or ownership is evidenced by certificates or other written instruments." The only evidence adduced before this Court that the instant Trust is to be regarded as a "moneyed business" separate and apart from the Trustees operating it, is contained in certain findings of fact and conclusions reached by a state court, entered in proceedings commenced by the Trustees, on an application "for guidance" which finally resulted in the appointment of a Receiver of all the property and assets of the Trust "and of its business." We need not here delineate the history and effect of such state court proceedings and decree. Suffice to say, a transcript of certain pleadings filed and decrees entered by the state court in respect to such matters is in evidence here and the same speaks for itself. Regardless of the manner in which the state court treated with the "entity" here, it is not binding on this court, either by way of *res judicata* or any other principle of estoppel. We must treat with this Trust as an "entity" in accordance with the mandates of the Bankruptcy Act, and not in the fashion in which a state court may act in respect thereto when it was petitioned for "guidance" by the Trustees, who apparently could not agree in respect to certain trust property. In a "guidance" proceeding the state courts had unlimited jurisdiction in equity; ours in the instant matter is circumscribed by the Bankruptcy Act.

■ When the instant Trust is measured by the Trust Agreement under which it was created, and the powers and duties thereby imposed on the Trustees considered in respect to the trust fund established and the interest which "Participants" have therein, we do not believe that such "entity" is a "person" within the intent and meaning of a "corporation" as defined in Section 1(8) of the Bankruptcy Act, nor a "person" within the ambit of Section 4, sub. a or b who may file a voluntary petition in

bankruptcy, for the following reasons, (11 U.S.C.A. § 1(8, 23) and § 22, subs. a, b: First: Under Missouri law, an entity composed of an association of individuals, not incorporated, is not recognized as having any legal existence separate and apart from the members thereof. (cf.) Thadeus Kosciuszko Soc. v. Polish Home Ass'n, Mo.App., 218 S.W.2d 811; Forest City Mfg. Co. v. International Ladies' Garment Workers' Union, etc., 233 Mo.App. 935, 111 S.W. 2d 934; Ruggles v. International Ass'n, etc., 1932, 331 Mo. 20, 52 S.W.2d 860. Although the trust instrument here creates a resulting "entity" under which the Trustees are to maintain the trust and in which name the title to trust assets are to be registered, it is transparent from all other provisions thereof that such entity is not an "association" and has no legal existence separate and apart from the Trustees. The "Trustees" and the title they have to the trust property and the power to be exercised by them in the administration of the trust estate, are the core and pith of this "Trust" and not the entity resulting therefrom. Secondly: The "Trust" here considered does not appear to be a moneyed business, conducted like a corporation, or a "corporation" within the ambit of Section 1(8) of the Bankruptcy Act, because the "Participants" thereof do not have any beneficial interest in the trust fund evidenced by certificates or other written instruments, other than the Trust Agreement, itself. Under certain specified conditions the Trust Agreement authorizes the distribution to "Participants" of "Current Participation Certificates" but these certificates do not represent evidence of ownership in any part of the corpus of the trust. Said certificates are required to be in the form of promissory notes, restricted in amount, and "bearing (a) maturity and interest at such rate as the Trustees in the exercise of their discretion may determine." (Art. V.) When any such certificates are issued they are "non-assignable and non-transferable" under Article X of the Trust Instrument, supra, which makes "(a)ll interest in said trust and in the separate funds non-assignable and non-transferable, and none of them shall have any right to anticipate, pledge, hypothecate or create any lien upon said interest." A trust of the nature here considered does not appear to fall within the definition of "corporation" as contemplated by the Bankruptcy Act and, in our opinion, cannot be distinguished from the trust considered by the Court in Pope & Cottle Co. v. Fairbanks Realty Trust, 1 Cir., 1941, 124 F.2d 132. As there ruled by the First Circuit, a "Trust" whose business is conducted by Trustees, and the beneficial interest of the "Participants" in the trust is not evidenced by certificate or other written instrument *aliunde* the trust instrument, itself, is not within the definition of a "corporation" and subject to adjudication as a bankrupt, voluntary or involuntary. Aside from the fact that the Trust Agreement in question gives the Trust a formal name, it does not appear the ACMI Employees Profit Sharing Trust is anything other than a private trust set up by ACMI for the benefit of its employees. Such being the nature of said trust, we do not believe it to be subject to adjudication as a bankrupt, involuntary or voluntary, under either section 4 sub. a or b of the Act, supra. To hold that the instant trust was a person within the Act, subject to bankruptcy, we would be compelled to view the same as a business having the characteristics of a Massachusetts trust, or as an "association". That it has no such characteristics is manifest from the Trust Agreement and what is said in Pope & Cottle Co. v. Fairbanks Realty Trust, supra.

The Order of Reference to the Referee in Bankruptcy, heretofore entered herein, is by the Court of its own motion set aside. The prayers of the intervening petitions herein to set aside the adjudication in bankruptcy and to dismiss the voluntary petition for adjudication of Associated Cemetery Management, Inc. Employees Profit Sharing Trust are sustained. It is so ordered.