ASSOCIATED CEMETERY MANAGEMENT, INC., Employees' Profit Sharing Trust, et al., Appellants,

v.

Z. C. BARNES et al., Appellees.

No. 16112.

United States Court of Appeals
Eighth Circuit.

June 17, 1959.

Rehearing Denied July 10, 1959.

Robert L. Jackson, Kansas City, Mo., for appellants.

Oscar S. Brewer and A. J. Granoff, Kansas City, Mo., for appellees Z. C. Barnes, and others, intervening Trustees (Brewer, Myers & Branton, and Thomas E. Deacy, Jr., Deacy & Deacy, Kansas City, Mo., for Harry M. Phelan, Jr., and others, participant intervenors, were with them on the brief), for appellees.

J. H. Birmingham, Jr., Tipton, Birmingham, Taylor & Furry, Kansas City, Mo., for Clyde A. Sievers, appellant, submitted motion and brief on his behalf to dismiss appeal.

John J. Fallon, Frank P. Barker, Edwin Heller, Barker, Fallon, Jones & Barker, Kansas City, Mo., and Strasser, Spiegelberg, Fried & Frank, Washington, D. C., presented brief for H. Braverman & Co., amicus curiae.

Before SANBORN, VAN OOSTERHOUT, and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

Six of the eleven trustees of Associated Cemetery Management, Inc., Employees' Profit Sharing Trust, which we shall for the sake of brevity refer to as "Trust," filed a petition in the District Court for the purpose of having Trust declared a bankrupt. Thereupon, an order was entered adjudicating Trust a bankrupt, and the proceedings were referred to the Referee in Bankruptcy. Later, four other trustees of Trust filed an intervening petition praying that the order of adjudication be set aside and that the petition of the six trustees be dismissed. Thirty-eight other persons claiming to be participants in Trust filed a similar intervening petition. Among other grounds, intervenors contended that Trust is not a "person" within the meaning of the Bankruptcy Act, and is not subject to adjudication as a voluntary bankrupt. In due time, the district court accorded the parties a full and complete hearing, and after consideration, set aside its adjudication of bankruptcy, and dismissed appellants' petition for bankruptcy, upon the ground that Trust is not

a "person" within the meaning and intent of Section 1(23) of the Bankruptcy Act (Title 11 U.S.C.A.) or a "corporation," within the ambit of Section 1(8) of the Act. See, In re Associated Cemetery Management, Inc., etc., D.C., 170 F. Supp. 298. From this order, an appeal on behalf of Trust was prosecuted to this Court.[1] Upon motion, leave was granted to H. Braverman & Co., an alleged creditor, to file brief as Amicus Curiae in this appeal.

At the outset, we have before us various motions to dismiss this appeal. Prior to institution of proceedings in bankruptcy, it appears there was severe discord among all of the trustees, which, among other things, resulted in an application by some of the trustees to the Circuit Court of Jackson County, Missouri, for "guidance and instructions." On May 23, 1958, that Court appointed one William Staley (an appellee here) as "receiver" or "managing trustee" of Trust, with power to deal generally with Trust's affairs, and at the same time ordered that the trustees and others interested be enjoined from interfering with any property or income of Trust. By its order, the state court retained jurisdiction of the matter for further action and relief, as necessary. Thereafter, upon application of six trustees, the initial order in bankruptcy was entered on June 3, 1958. Upon the hearing to set aside the adjudication in bankruptcy, the intervenors argued that the petitioning trustees were without power to act as trustees in instituting bankruptcy proceedings, by reason of the orders and jurisdiction of the state court. The District Court, looking to the terms of the trust instrument, found that "the majority of the Trustees existing at any given time [had power] to act for and on behalf of the trust estate," and such majority was empowered to file a petition for bank-

ruptcy, 170 F.Supp. at page 301. From the record we observe that although the transcript of proceedings in the state court was admitted in evidence, the District Judge expressed himself to the effect that anything occurring in the state courts had no bearing on the question of whether Trust as a "person" was subject to the bankruptcy laws of the United States. We are in accord with this view. See Vol. 5, Remington on Bankruptcy, 5th Ed., § 2080; 6 Am.Jur. Bankruptcy, § 113 and cases cited and cf. In re Wisconsin Cooperative Milk Pool, 7 Cir., 119 F.2d 999, at page 1002, certiorari denied 314 U.S. 655, 62 S.Ct. 105, 86 L.Ed. 525. Now before us, we have the petition of Mr. Staley, the "managing trustee" appointed by the state court, praying for dismissal in his own right, together with petition of the intervening trustees who have been joined by the 11th trustee, and the participant intervenors, asking for dismissal of this appeal. In addition, one of the original appellants, Mr. Sievers, has also presented a petition to dismiss the appeal. Taken together, the petitions to dismiss generally question the trustee status of appellants, and their power to initiate bankruptcy proceedings on behalf of Trust and to prosecute this appeal from the decision of the district court.

In view of our disposition of this matter, we need not reach the question of what parties are entitled to represent and act for Trust, and accordingly, all motions to dismiss this appeal are denied.[2]

To determine whether this trust is subject to bankruptcy, we look first to the petition, verified by the six trustees who instituted the proceeding, to ascertain the category in which the petitioning trustees placed Trust. It states:

"Your petitioner is an express trust created by Trust Agreement dated December 17, 1956, as amend-

---

1. Although the notice of appeal was filed by "Associated Cemetery Management, Inc., Employees Profit Sharing Trust," by attorney Robert L. Jackson, we regard the appeal initially as being taken by the six trustees who initiated the pro-

ceedings in bankruptcy, and the term "appellants" should so be regarded.

2. Cf. In re Manufacturing Lumbermen's Underwriters, D.C.W.D.Mo., 18 F.Supp. 114, 116–123.

ed, * * *. Your petitioner is not a municipal, railroad, insurance, banking or a building and loan association, but is a moneyed, business or commercial corporation, not possessed by individuals or partnerships. The business conducted by the Trustees is unincorporated and is one wherein beneficial interests or ownerships are evidenced by certificates or other written instruments."

Since the petitioning trustees declared that Trust was created by "Trust Agreement dated December 17, 1956, as amended," and made a copy of such agreement a part of the petition, we examine this agreement (a part of the record), to ascertain the purposes to be accomplished, the powers and duties of the trustees, the beneficiaries of the trust fund, etc. While the trust agreement and amendments thereto are lengthy, consuming 31 pages of the printed record, we shall attempt to summarize the salient features thereof which in our judgment must be considered in resolving whether Trust is an entity encompassed by the Bankruptcy Act.

Associated Cemetery Management Co., Inc., hereinafter referred to as ACMI [not directly involved in this proceeding], operated as a management company for a large number of cemetery corporations. In the trust agreement, ACMI, as the settlor, is designated as the first party, and fifteen individuals, as parties of the second part, were designated trustees. By definition, the words, "Associated Company," means any one of forty-eight named cemetery corporations. Any employee of ACMI was automatically eligible to participate in the profit sharing plan evidenced by the agreement, who, on June 30, 1957, or any anniversary date of the agreement, had been continuously employed by ACMI or an Associated Company for a stated period of years and under certain conditions not here material. Article III provided that ACMI was to make contributions to the plan from time to time. Article IV deals with participation in the trust fund and imposed upon the trustees certain duties with respect to keeping records of the interests therein, and of allocating the funds; and Article V provides for distribution of benefits to participants. The general powers, duties and liabilities of the trustees are enumerated in Article VII. Among the broad powers granted, the trustees were authorized to invest or reinvest all funds in securities and property, including common stocks of cemetery and other corporations; to vote any shares of capital stock held; and to borrow money and execute notes, bonds or other written instruments evidencing indebtedness for money borrowed. Paragraph 9 of this article provided that "Title to the Trust assets shall be registered in the name of this Trust, and ownership thereof shall be vested in the Trustees from time to time acting, and no evidence of the transfer of such ownership from a retiring or deceased Trustee to his successor shall be deemed necessary."

■■ Fairly stated, appellants' broad contention on appeal is that the trial court erred in finding and ruling that Trust is not a "person" within the meaning and intent of Section 4, subs. a, b of the Bankruptcy Act. [52 Stat. 845, 11 U.S.C.A. § 22, subs. a, b]. Keeping in mind the essential factors going to make up Trust, we consider the applicable sections of the Act. Subsection a of Section 4 (Title 11, § 22, sub. a, U.S.C.A.) provides:

"Any person, except a municipal, railroad, insurance, or banking corporation or a building and loan association, shall be entitled to the benefits of this title as a voluntary bankrupt."

For further definitions, we turn to § 1 of the Act and find that:

" 'Persons' shall include corporations, except where otherwise specified, and officers, partnerships, and women, * * *." [§ 1 (23), Title 11, U.S.C.A.]

and that,

" 'Corporation' shall include all bodies having any of the powers and

privileges of private corporations not possessed by individuals or partnerships and shall include partnership associations organized under laws making the capital subscribed alone responsible for the debts of the association, joint-stock companies, unincorporated companies and associations, and any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument;" [§ 1(8), Title 11, U.S.C.A.].

Analysis of the foregoing sections clearly demonstrates that the term "person," includes the word "corporation", which in turn, as used in the Bankruptcy Act, encompasses unincorporated companies and associations, and any business conducted by trustees wherein beneficial interests are evidenced by certificates or other written instruments issued to those participating in the trust fund. As a result of this provision of the Act, the principle emerged and is now well settled that a Massachusetts or business trust may be adjudicated a bankrupt on a voluntary or involuntary petition. See 6 Am.Jur. Bankruptcy, § 142; Annotation 156 A.L.R. 22, page 215 et seq.; and cf. Pope & Cottle Co. v. Fairbanks Realty Trust, 1 Cir., 124 F.2d 132.

From the record it appears that in the trial court, appellants, through counsel took the position that Trust was a business conducted by trustees wherein beneficial interests were evidenced by certificates or other written instruments. Thus, in their verified petition for adjudication as a voluntary bankrupt, the trustees stated "Your petitioner is an express trust created by Trust Agreement dated December 17, 1956, as amended, * * *. The business conducted by the Trustees is unincorporated and is one wherein beneficial interests or ownerships are evidenced by certificates or other written instruments." However, in light of the provisions of the trust instrument, as well as actual operations by the Trustees, it is very clear that the power of the employee-beneficiaries was limited to sharing in the election of four Trustees, with the right to designate a beneficiary of benefits accruing to them at death, and that in fact the beneficiaries had no transferable interest in the trust funds.

Under Paragraph 4 of Article V of the Trust Agreement, it is provided that "The Trustees may in their uncontrolled discretion * * * make a distribution to all the Participants * * * in cash or current Participation Certificates, such certificates to be in the form of promissory notes, * * *." But Article X, entitled "Nature of Participant's Interest," provides that "no Participant or Beneficiary shall, under any circumstances, receive anything of present exchangeable value from the Trust * * * in anticipation of or prior to the actual distribution of his interest herein * * and no Participant or Beneficiary shall, under any circumstances, exercise any control over the use and disposition of the Trust, or any part thereof. * * * All interest in said Trust and in the separate funds, if any, maintained hereunder, vested in each Participant * * *shall be non-assignable and non-transferable,* and none of them shall have any right to anticipate, pledge, hypothecate or create any lien upon said interest." (Emphasis supplied). Thus, by the explicit terms of the trust instrument, the participants are prohibited from assigning or transferring any certificate or written instrument evidencing their interest in the trust fund. Moreover, it appears from the testimony of Mr. Staley, one of the trustees, and the only witness who testified in the hearing, that no certificates or other written instruments evidencing the interests of participants in the fund, had in fact been issued. The picture presented conclusively establishes that the Trust does not qualify as a "business conducted by a trustee, or trustees, wherein beneficial interest or ownership is evidenced by certificate or other written instrument." Congress, through use of this specific language, has singled out the Massachusetts trust as qualifying for bankruptcy

proceedings, thereby indicating that trusts generally are not within the purview of the Bankruptcy Act. Absence of the required transferable certificates of interest is fatal to appellants' contention in this regard. See 6 Am.Jur., Bankruptcy, § 142, which states:

"An ordinary trust in property is not subject to adjudication in bankruptcy. It does not fall within the classification of 'corporations' subject to adjudication, either directly or indirectly as a partnership association or joint stock company, which is included in the definition of 'corporation' made by § 1(8) of the Bankruptcy Act. * * * The absence of certificates evidencing beneficial interest or ownership, moreover, precludes an adjudication of an ordinary trust as a business trust. The trust instrument itself is not such an instrument evidencing beneficial interests in the trust as will suffice to render the trust subject to adjudication."

Typical of this general rule is the decision in Pope & Cottle Co. v. Fairbanks Realty Trust, 1 Cir., 124 F.2d 132, relied upon by the trial court. There, the declaration of trust provided that the beneficiaries (two mothers of the trustees) were to enjoy equal shares in the trust estate. The court there held that, absent transferable certificates of beneficial interest, the trust amounted to no more than a private family trust. We believe, as did the trial court, that the trust in Pope & Cottle cannot be distinguished from the trust herein involved in that regard. See also In re Bloom, D.C.N.D.Ill., 10 F.Supp. 806.

As an alternative contention, throughout appellants' brief the further suggestion appears that Trust comes within the scope of the term "Corporation," as defined by Section 1(8), 11 U.S.C.A., in that the entity is in reality an unincorporated company or association, having powers and privileges of a private corporation. It cannot be gainsaid that the term "corporation" is given a broad meaning by the statute, and that unin-corporated companies and associations are encompassed within the expressed meaning of the term. In addition to the statute, there is authority that unincorporated bodies or associations are amenable to the Bankruptcy Act. Thus, in In re Sargent Lumber Co., D.C.E.D.Ark., 287 F. 154, it was held that a voluntary unincorporated association, under articles providing that members be given shares for their respective contributions to the capital fund, and that they elect trustees annually, who in turn select officers with "all the powers incident to such officers in the case of corporations" was entitled to benefits of the Act. But that case is clearly distinguishable from the instant situation, in that there the "bankrupts formed a voluntary, unincorporated association." The Sargent case came in for criticism by District Judge Otis in the case of In re Manufacturing Lumbermen's Underwriters, D. C.W.D.Mo., 18 F.Supp. 114, involving a reciprocal insurance exchange. That court reached the conclusion that the statute included only natural persons, corporations, partnerships, and not unincorporated associations. As pointed out by Collier in his work on Bankruptcy, 14th Ed. Vol. 1, § 4.06, the construction in the Manufacturing Lumbermen's case "ignores the definition of the words 'persons' and 'corporations' as set forth in § 1(23) and (8) respectively. These definitions are set out for the express purpose of use throughout the Act and since the word 'persons' as used in § 4a must therefore be held to include corporations, and since 'corporation' is defined as including 'joint stock companies, unincorporated companies and associations, and any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument', a sound construction places unincorporated bodies within the scope of § 4a. Any other conclusion is illogical." See also 6 Am.Jur., Bankruptcy, § 123; Remington on Bankruptcy, Vol. 1, § 92; and In re Poland Union, 2 Cir., 77 F.2d 855, 856, involving a voluntary association,

issuing shares in a co-operative country general merchandise store, where it is said:

"An unincorporated company, as used in the Bankruptcy Act, § 4 [sub. b], 11 U.S.C.A. § 22 [sub. b], includes at least any unincorporated association or group of individuals whose object and purpose are either wholly or chiefly of the same kind as the object and purpose of a moneyed business or commercial corporation. In re Minnesota Ins. Underwriters, D.C., 36 F.2d 371; Gallagher v. Hannigan, C.C.A., 5 F.2d 171; In re Parker, D.C., 275 F. 868; In re Order of Sparta, 3 Cir., 242 F. 235."

However, again, our factual situation is readily distinguishable from Poland Union. Particularly apropos to and dispositive of the contention that Trust is an unincorporated company or association, within the meaning of the term "corporation," is Pope & Cottle Co. v. Fairbanks Realty Trust, supra, 124 F.2d 132. The creditor filing the involuntary petition, described the alleged bankrupt as "a voluntary association and an unincorporated company * * *." Addressing itself to the subject, the court stated, at page 134:

"The courts have not attempted to give any comprehensive definition of 'unincorporated company' but have inclined to decide each case on its facts as it arose. In general, the organizations which they have held to be subject to involuntary bankruptcy in this category have been unincorporated associations of persons joining together at least in part for some common business or commercial purpose, and conducting their affairs somewhat after the pattern of corporations. See In re Seaboard Fire Underwriters, D.C.S.D. N.Y.1905, 137 F. 987; In re Order of Sparta, 3 Cir., 1917, 242 F. 235; In re Tidewater Coal Exchange, 2

Cir., 1922, 280 F. 638, certiorari denied sub nom. Delaware S. S., etc., Corp. v. New England C. & C. Co., 1922, 259 U.S. 584, 42 S.Ct. 587, 66 L.Ed. 1075; In re Minnesota Insurance Underwriters, D.C.Minn., 1929, 36 F.2d 371; In re Poland Union, 2 Cir., 1935, 77 F.2d 855."

The court ruled that the trust under consideration did not fall within the category of "unincorporated companies and associations" 124 F.2d 132, at 135.

"It is not an unincorporated company within any of the decided cases, for the beneficiaries have not associated themselves together for the conduct of a business with powers similar to those of stockholders in corporations, as was the case in Re Associated Trust, D.C.Mass.1914, 222 F. 1012, and in Re Sargent Lumber Co., D.C.E.D.Ark., 1923, 287 F. 154. And see Gallagher v. Hannigan, 1 Cir., 1925, 5 F.2d 171. It is no more of a 'company' than any ordinary trust having two or more beneficiaries. Nor do we think it is an 'association' within the meaning of § 1(8). We doubt very much whether the words 'and associations' add anything to the words 'unincorporated companies' used in the same phrase." [3]

So in this case, none of the characteristics of an unincorporated company or association is present. By no stretch of the imagination can it be said that the legal effect of the trust agreement was to form an association of the beneficiaries of the trust for the conduct of a business. And by the very nature of the trust relationship, it is clear that the Trustees, as such, cannot be said to have associated themselves for the purpose of conducting business.

■ We are not impressed with appellants' contention that the trial court's reliance on Pope & Cottle was misplaced

3. An "association" has been defined as "a body of persons united without a charter but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise." See In re Poland Union, 2 Cir., 77 F.2d 855, 856.

because it involved an *involuntary* proceeding. We recognize the distinction that exists between voluntary and involuntary proceedings in bankruptcy. By the explicit provisions of Section 4, sub. b (Title 11 U.S.C.A. § 22, sub. b), involuntary proceedings are limited to "natural persons (except a wage earner or farmer) and any moneyed, business or commercial corporation", with certain exceptions—whereas, "any person" (with certain exceptions), which, as we have seen, encompasses corporations, may be declared a voluntary bankrupt. Section 4, sub. a (Title 11 U.S.C.A. § 22, sub. a). Thus it is manifest that while any person or entity subject to involuntary bankruptcy may be adjudicated a voluntary bankrupt, the reverse is not necessarily true. For discussion, see Collier on Bankruptcy, 14th Ed., Vol. 1, § 4.06; Remington on Bankruptcy, 5th Ed., Vol. 1, § 92; Anno. 148 A.L.R. 714; Anno. 22 A.L.R.2d 1021, 1034 et seq.; Note, 15 So.Calif.L.R. 238; and cf. In re Manufacturing Lumbermen's Underwriters, D. C.W.D.Mo., 46 F.Supp. 343, 345. Further, we note that although Pope & Cottle had its genesis in the filing of an involuntary petition, the debtor subsequently interposed a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. Regardless of the origin, it is obvious that determination of the question presented in Pope & Cottle did not rest upon the nature of the proceeding. Neither does the opinion limit the effect of its ruling to involuntary proceedings.

We are mindful of the assertions repeatedly appearing in the brief of appellants, that Trust was authorized to and in fact did engage in business. The Courts have looked beyond the expressed powers of certain entities to find that non-profit bodies were in fact "conducting business" and as such were subject to involuntary proceedings in bankruptcy as "moneyed, business, or commercial" corporations. See Missco Homestead Ass'n v. U. S., 8 Cir., 185 F.2d 280, 22 A.L.R. 2d 1015, and In re Roumanian Workers Educational Ass'n, 6 Cir., 108 F.2d 782. Apart from the fact that these cases are clearly distinguishable in kind, we further observe that the trust instrument here does not confer upon *Trust* authority to engage in any business—all powers are delegated to the *trustees*. Neither is there factual support for the conclusion that Trust as such attempted to and did engage in business. It is true that the trustees, as authorized by the trust agreement, did enter into a contract to buy all of the shares of numerous cemetery corporations; that in connection with this purchase, a promissory note was executed by "Employees' Profit Sharing Trust By Its Authorized Trustees". (The record fails to reveal the names or number of trustees signing the note). It further appears that the trustees have entered into various contract agreements with respect to liens upon this stock; that they have voted the shares of the various corporations in elections of boards of directors of the various cemetery corporations and that in some instances a minority of the individual trustees has served on these boards in a dual capacity. It also appears that the trustees hold the stock of a certain operation known as Chapel Hill Cemeteries, Inc., which apparently acts as a "home office" for the various other cemetery corporations, engaging in central bookkeeping, etc. However, Mr. Staley definitely stated that Trust as such had no payroll, did not operate any of the cemeteries; that Chapel Hill Cemeteries, Inc. did not operate any cemeteries—rather that in each instance the individual boards of directors were responsible for the operation of each cemetery corporation individually—and that Trust itself is interested only to the extent that it depends upon dividends from the shares it holds for trust income. While these transactions may be beyond and outside the strict letter of the expressed authority of the trustees, nevertheless such activities did not transform what we regard as a private trust into a "business, moneyed or commercial corporation" or into a "person" within the meaning of the Bankruptcy Act.

The order appealed from is affirmed.