432 F.Supp. 1326 (1977)
In the Matter of HIGHWAY AND CITY FREIGHT DRIVERS, DOCKMEN, AND HELPERS, LOCAL UNION NO. 600, a Voluntary Unincorporated Labor Organization, Bankrupt.
No. 77-0131C(3).
United States District Court, E. D. Missouri, E. D.
June 20, 1977.
*1327 Stephen H. Gilmore, Joseph B. Dickerson, Jr., St. Louis, Mo., for bankrupt respondent.
Hyman G. Stein and Charles Alan Seigel, St. Louis, Mo., and Charles H. Spoehrer and Ned O. Lemkemeier, St. Louis, Mo., for movants-appellants.

MEMORANDUM
WANGELIN, District Judge.
This is an appeal from an order of the Bankruptcy Court refusing to set aside an adjudication of bankruptcy. In April of 1970 the Highway and City Freight Drivers, Dockmen and Helpers, Local Union No. 600 (hereinafter "Local 600") engaged in an unauthorized strike. The strike violated the Union's contract and resulted in a judgment in October of 1974 on behalf of more than sixty motor carrier companies.[1]See Motor Carrier's Council of St. Louis, Inc. v. Local Union No. 600, 370 F.Supp. 461 (E.D.Mo. 1972). As a result of this judgment Local 600 has filed a petition in bankruptcy.
Fifty-nine (59) of the Motor Carrier Judgment Creditors moved the Bankruptcy Court to set aside the adjudication of bankruptcy and dismiss the Union's petition. The motion was based upon two theories: (1) a labor union cannot be considered a "person" under section 4(a) of the Bankruptcy Act, 11 U.S.C. § 22(a); and (2) Local 600 has no existence independent of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, thus that entity must join in any bankruptcy proceedings. The primary question, whether unions are entitled to initiate voluntary bankruptcy proceedings, is a question of first impression.
Only "persons" are entitled to the benefits of voluntary bankruptcy.[2] A "person" is defined to include "corporations".[3] "Corporation" is defined to:
include all bodies having any of the powers and privileges of private corporations *1328 not possessed by individuals or partnerships and shall include partnership associations organized under laws making the capital subscribed alone responsible for the debts of the association, jointstock companies, unincorporated companies and associations, and any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument. (Emphasis added). 11 U.S.C. § 1(8).
Local 600 takes the position that unions should be considered "associations" under section 1(8). Relying upon United Mine Workers of America v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922) and other authority, the Bankruptcy Court held that Local 600 is an association under the Act.
The first step of analysis must be to examine the language of the statute. It is arguable that the word association can normally be construed to include labor unions. Cf. Coronado Coal Co., supra. However, the language of the statute must be construed in context. Pennington v. Coxe, 6 U.S. 16, 27, 2 Cranch 33, 2 L.Ed. 199 (1804). Section 1(8) defines corporations. It refers to business oriented entities with powers similar to corporations. A labor union is not generally considered such an entity.
The courts construing section 1(8) previously have avoided the temptation to give the term association a broad definition.[4] One court has expressed an even more restrictive view. "We doubt very much if the words `and association' add anything to the words `unincorporated companies' used in the same phrase". Pope & Cottle v. Fairbanks Realty Trust, 124 F.2d 132, 136 (1st Cir. 1941).
In general, however, courts have looked for entities with purposes like those of a monied business or corporation, "conducting their affairs somewhat after the pattern of corporations." Associated Cemetery Management, Inc. v. Barnes, 268 F.2d 97, 103 (8th Cir. 1959). Unlike a corporation a labor union does not pool capital for the purposes of investment and profit. Its assets are mainly its members who can collectively obtain bargaining leverage in labor-management negotiations. Its other financial functions are ancillary to this purpose.
Also, section 1(8) of the Act is one of two sections that defines person. In those two sections more than ten entities are listed,[5] none of which are "labor organizations". The maxim expressio unius est exclusio alterius[6], while not controlling, certainly supports the inference that labor unions are not considered persons under the Bankruptcy Act.
The only conclusion reached thus far is that the wording of section 1 does not demand a particular construction. Thus the Court looks to the legislative history of the Bankruptcy Act for guidance. Church of the Holy Trinity v. United States, 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226 (1892).
The present Bankruptcy Act is the product of nearly one hundred and eighty years of legislative action.[7] The fifth major legislative effort, the Chandler Act of 1938, substantially reflects the law today. Over the years Congress has changed the Act so *1329 that different persons and entities have been entitled to the benefits of bankruptcy. For example, the Act of 1800 was limited to certain businessmen.[8] The Act of June 25, 1910, first included corporations within section 4 (the section describing who may become bankrupts). The many amendments to the four American Bankruptcy Acts demonstrate that Congress has varied access to bankruptcy proceedings by specifically including or excluding certain entities.
The Act of May 27, 1926, 44 Stat. 662, added the present definition of corporation to the Act. Before that time it was not arguable that labor organizations could become bankrupts. Congressional debate indicates that this amendment had one purpose: to qualify certain trusts for bankruptcy. Referring to the amendment of section 1 Earl C. Michener, a Michigan member of the House Judiciary Committee, said:
The principal changes are:
(1) the meaning of the term `corporations' is broadened so as to include common-law trusts, and so forth. Under the law today common-law trusts, or what are sometimes called Massachusetts trusts, are not subject to the Bankruptcy Law and this amendment cures this defect in the law. 67 Cong.Rec. 7671, 7675 (1926).
There is no indication in committee reports or elsewhere that the amendment was intended to include labor organizations.
Contemporary commentators, while questioning the wisdom of the amendments, reached the same conclusion. McLaughlin, Amendment of the Bankruptcy Act, 40 Harv.L.Rev. 341, 355-65 (1927). See also Colin, An Analysis of the 1926 Amendments to the Bankruptcy Act, 26 Col.L.Rev. 789 (1926).
The development of American labor law is another factor to be considered. The first recorded American labor case[9] was decided six years after the passage of the first Bankruptcy Act. A substantial body of federal labor law was created by the courts in the Nineteenth Century. See, e. g., In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092 (1895). The Erdman Act of 1898, 30 Stat. 424, was the first congressional attempt[10] to regulate unions. Like the Erdman Act, subsequent labor legislation described unions as "labor organizations".[11]
In sum, Congress was well aware of labor organizations and their activities by the first part of this Century. Proposed legislation concerning unions generated loud political controversy. The fact that the bankruptcy amendments of 1926 did not create such a political debate is convincing evidence that they were not intended to apply to labor organizations.
The decision of the Bankruptcy Court was based in large part on United Mine Workers of America v. Coronado Coal, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922). Coronado Coal held that activities of labor organizations were covered by the Sherman Act. The Court relied on an earlier decision that members of unions were subject to the restraints and sanctions of the Sherman Act. Loewe v. Lawlor (Danbury Hatters' Case), 208 U.S. 274, 28 S.Ct. 301, 52 L.Ed. 488 (1908).
The Court in Coronado Coal looked to both legislative intent and the purpose of the Sherman Act in interpreting the word association. Thus the Court gave the word a broad definition:
The persons who may be sued under § 7 include `corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any *1330 State, or the laws of any foreign country'. This language is very broad, and the words given their natural signification certainly include labor unions like these. They are as has been abundantly shown, associations existing under the laws of the United States, of the Territories thereof, and of the states of the Union. 259 U.S. at 392, 42 S.Ct. at 576.
However, this definition was explained in terms of Congressional policy:
Congress was passing drastic legislation to remedy a threatening danger to the public welfare, and did not intend that any persons or combinations of persons should escape its application. Their thought was especially directed against business associations and combinations that were unincorporated to do things forbidden by the Act, but they used language broad enough to include all associations which might violate its provisions recognized by the statutes of the United States or the states or the territories, or foreign countries as lawfully existing; and this, of course, includes labor unions, as the legislations referred to shows. (Emphasis added) 259 U.S. at 392, 42 S.Ct. at 576.
The Sherman Act is designed to prevent certain conduct, the restraint or monopolization of commerce, by an entity or combination of persons. To further this purpose it is not really necessary to consider the juristic nature of an entity, only its conduct.
The Bankruptcy Act was designed to provide relief to certain debtors by giving them a new start and to distribute assets equitably to creditors. Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 559, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). The Characterization of Local 600 as a person could serve these purposes. But it would also conflict with the clear intent of Congress, unlike the situation in Coronado Coal. Thus the procedural aspects of Coronado Coal and its affirmation of the Danbury Hatters' Case cannot control this case.
A final word on federal labor policy is necessary. The essence of labor law is the balance of power between labor and management. That balance may only be disturbed by Congress. Cf. New York Telephone Co. v. New York Department of Labor, 434 F.Supp. 810 (S.D.N.Y.1977) (dealing with federal preemption of questions of labor policy); Amalgamated Association of Street Employees v. Wisconsin Employee Relations Board, 340 U.S. 383, 71 S.Ct. 359, 95 L.Ed. 364 (1951). Although the constitutional parameters of the bankruptcy power may be defined by the courts, its exercise is vested in the legislative branch. Cf. Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co., 294 U.S. 648, 670, 55 S.Ct. 595, 79 L.Ed. 1100 (1935). The judicial inclusion of labor organizations in section 4 of the Bankruptcy Act would usurp that legislative power.
After reaching this conclusion it is unnecessary to discuss the Motor Carriers' claim that Local 600 and the International Union must be considered as one for Bankruptcy purposes. Accordingly, the order of the Bankruptcy Court will be reversed and the case remanded with instructions to dismiss the bankruptcy petition of Local 600.
NOTES
[1] The judgments total approximately six million dollars.
[2] Section 4(a) of the Act provides that: "Any person, except a municipal, railroad, insurance or banking corporation or a building and loan association, shall be entitled to the benefits of this Act as a voluntary bankrupt." 11 U.S.C. § 22(a). All statutory references are to the Bankruptcy Act unless otherwise noted.
[3] § 1(23) of the Act, 11 U.S.C. § 1(23).
[4] See, e. g., Associated Cemetery Management, Inc. v. Barnes, 268 F.2d 97 (8th Cir. 1959), aff'g In re Associated Cemetery Management, Inc., Employees Profit Sharing Trust, 170 F.Supp. 298 (W.D.Mo.,1958); In re Fairbanks Realty Trust, 40 F.Supp. 77 (D.Mass.1941).
[5] Sections 1(8) and (23) include within the definition of person the following: Corporations, women, officers, partnerships, members of boards of directors or trustees, partnership associations, joint stock companies, unincorporated companies, and associations.
[6] The phrase means literally that the expression of one thing is the exclusion of the other. It is only a maxim of construction and not a rule of substantive law. Crancer v. Lowden, 121 F.2d 645, 649 (8th Cir. 1941). The Court recognizes that the maxim could also be applied to that part of § 4(a) which excludes certain entities from the Act. Labor organizations are not expressly excluded.
[7] The first Act was passed in 1800. For a discussion of that Act and its successors see 1 Collier on Bankruptcy, ¶¶ 0.01-.07 (14th Ed. 1974).
[8] 1 Collier on Bankruptcy, ¶ 4.01, 573 (14th Ed. 1974).
[9] Philadelphia Cordwainers' Case (Pa.1806) reported at 3 Commons & Gilmore, Documentary History of American Industrial Society, 59-248 (1910-11).
[10] The Act was declared unconstitutional in Adair v. United States, 208 U.S. 161, 28 S.Ct. 277, 52 L.Ed. 436 (1908).
[11] Section 6 of the Clayton Act is another example. Act of Oct. 15, 1914, ch. 323, § 6, 38 Stat. 731.