LUMBARD, Circuit Judge:
Debtor Land Trust No. 2, through its trustee Richard H. M. Maidman, sought the protection of Chapter XII of the Bankruptcy Act of 1898, §§ 401 et seq., 11 U.S.C. §§ 801 et seq. (1976)[1] over the objection of mortgagee Compass Investment Group that land trusts could not file for bankruptcy relief. Bankruptcy Judge Lewittes held that land trusts could file under the Act, 2 B.R. 569, 5 B.C.D. 1334 (S.D.N.Y. 1980). The district court affirmed in an unpublished order (Motley, J.). We affirm.
The Chapter XII petition, the documentary record and the bankruptcy court’s opinions and proceedings provide the facts, which are not disputed on this appeal. Land Trust No. 2 was created under Florida law on December 19, 1975, as part of a series of complex transactions relating to the ownership, management and financing of the International Hotel and the Barcelona Hotel in Miami Beach, Florida.[2] Land Trust No. 2 holds a 99 year lease on the land beneath the hotels, and owns the fee in the hotels themselves. Land and buildings were mortgaged to Compass, securing a $4,250,000 note on which principal and $2,008,792 accrued interest were in default on the date of the petition.[3] Land Trust No. 2 defaulted on Compass’s note in 1976 *684 and negotiated with Compass under threat of foreclosure through 1976 and 1977.[4] Compass initiated foreclosure proceedings in Florida state court in January 1978, and a receiver was appointed to take possession of the property on January 24. But the foreclosure action was stayed on January 25 when a Chapter XII petition was filed by Barcelona Operating Associates No. 2 (BOA No. 2), which had possession of the hotels as sublessee and managing agent for Land Trust No. 2. BOA No. 2 failed to get acceptances for its plan of arrangement at a meeting on June 29, 1978. Three weeks later, that Chapter XII proceeding was dismissed for lack of jurisdiction. Only debtors with real property pledged to support a loan may file under Chapter XII, and though Land Trust No. 2’s ground lease and hotels are pledged, BOA No. 2’s sublease was not. In re Barcelona Operating Associates No. 2, 78-81-Bk-JE-H (S.D.Fla. July 18, 1978). Compass renewed foreclosure proceedings. On December 19, 1978, the receiver entered into a short-term lease of the Barcelona Hotel to Jomar Corp. at a rent of $210,000 per month. On January 9, 1979, Maidman filed the present Chapter XII petition on behalf of Land Trust No. 2, and the bankruptcy court issued an order permitting Land Trust No. 2 to regain possession of the hotels. Two days later, however, the bankruptcy court reversed itself and amended the order to subject the debt- or .to Jomar’s lease. On January 16, the bankruptcy court ordered the debtor not to interfere with Jomar’s possession. The injunction was upheld February 23 in the district court. In re Maidman, 466 F.Supp. 278 (S.D.N.Y.1979) (Gagliardi, J.).
On March 8, 1979, Compass moved to dismiss on the ground that the land trust was not a “person” within the meaning of § 1(23) of the Bankruptcy Act of 1898, 11 U.S.C. § 1(23). Only “persons” within that section may file a Chapter XII petition. On February 1,1980, the bankruptcy court held that the Bankruptcy Act evinced no purpose to exclude land trusts, and that the Act’s larger goals of debtor relief and equity among creditors would be served by applying the Act to the land trust. Absent a prohibition in the Act or a competing forum qualified to distribute the assets of the debtor, the bankruptcy court concluded that bankruptcy relief should not be denied to a debtor who can benefit from the Act’s provisions. The district court affirmed on May 20, 1981. This appeal followed.
I.
The debtor/appellee raises preliminary objections to this appeal on the grounds either that the case is moot or that the decision below is not a “final order” and hence not appealable. The first objection rests on the bankruptcy court’s dismissal of this Chapter XII petition on August 4,1981, for want of prosecution. But though the bankruptcy case has been dismissed, that dismissal is itself on appeal to the district court.[5] So long as that appeal is alive, this one is not moot. The second objection rests on the interpretation of § 24(a) of the Bankruptcy Act of 1898, 11 U.S.C. § 47(a), which provides that both interlocutory and final orders are appealable from “proceedings in bankruptcy,” but only final orders are appealable from “controversies in proceedings in bankruptcy.” A “proceeding” involves the administration of the bankrupt’s estate, while a “controversy” involves the competing claims of parties in the proceedings. United Kingdom Mutual Steamship Assurance Ass’n v. Liman, 418 F.2d 9, 10 (2d Cir. 1969). The eligibility of Land Trust No. 2 for bankruptcy relief determines whether the administration of the estate shall proceed. It does not concern the rights of competing parties. Therefore *685 this appeal is an appeal from a “proceeding” in bankruptcy, and this court has jurisdiction under § 24(a).
II.
Chapter XII is open to non-corporate debtors who can file a voluntary bankruptcy petition. Sections 406(6), 422, 11 U.S.C. §§ 806(6), 822. Any “person,” with exceptions not here relevant, may file a voluntary petition, § 4(a), 11 U.S.C. § 22(a). Person is defined in § 1(23), 11 U.S.C. § 1(23), as follows:
(23) “Persons” shall include corporations, except where otherwise specified, and officers, partnerships, and women. . .
Because this definition uses the words “shall include,” rather than the words “shall mean,” which appear in other definitions, the Supreme Court read this language “to expand not to restrict” the meaning of “person.” American Surety Co. of New York v. Marotta, 287 U.S. 513, 517, 53 S.Ct. 260, 261, 77 L.Ed. 466 (1933). Citing its interpretation of “Person includes ...” in § 1(23), the Court held that § l(ll)’s definition of creditor — “Creditor includes . . . ”— comprehended a surety even though the surety’s liability is contingent and sureties are not mentioned in § 1(11). We believe that, although land trusts are not expressly mentioned as “persons,” the statute should not be read to exclude them. As the statute provides no further specific indication as to the meaning of the word “person,” we should give weight to the general purposes of the Bankruptcy Act. Bankruptcy legislation has two purposes: debtor relief, see United States v. Kras, 409 U.S. 434, 448-49, 93 S.Ct. 631, 639-40, 34 L.Ed.2d 626 (1973), and equity among creditors, see Young v. Higbee Co., 324 U.S. 204, 210 & n.8, 65 S.Ct. 594, 597 & n.8, 89 L.Ed. 890 (1945). The first purpose is clearly served by permitting Land Trust No. 2 to operate in bankruptcy court. Even in liquidation proceedings, the Act allows the debtor or his trustee to proceed without harassment. See Matter of Nat’l Hospital & Institutional Bldrs. Co., 658 F.2d 39, 44 (2d Cir. 1981). Compass has tried to deprive the debtor of possession and control of the hotels through state court litigation; even in bankruptcy proceedings, Compass has objected to the debtor’s efforts to lease an unproductive wing of the Barcelona Hotel for $275,000 per year plus a percentage of profits.[6]
The second purpose of the Act, equity among creditors, is served best by allowing Land Trust No. 2 to proceed under the Act because the Act gives the debtor or trustee power to recover preferences and fraudulent conveyances, §§ 60, 67d, 11 U.S.C. §§ 96, 107(d), beyond the powers available in state courts.[7]
As the Act contains such broad powers, we have allowed a foreign banking corporation to proceed under the Act, even though national banks are excluded from the Act’s coverage under § 4(a), 11 U.S.C. § 22(a). Israel-British Bank (London) Ltd. v. FDIC, 536 F.2d 509, 515 (2d Cir.), cert. denied, 429 U.S. 978, 97 S.Ct. 486, 50 L.Ed.2d 585 (1976).[8]
Permitting land trusts access to bankruptcy courts will also further efficient administration of the Bankruptcy Act. As the law now stands, the individual beneficiaries of a land trust may protect the business by filing as individuals under Chapter XII, Master of Gladstone Glen, 628 F.2d 1015 (7th Cir. 1980). But this means either that one beneficiary’s Chapter XII shields all beneficiaries by protecting the land trust *686 or that all beneficiaries become necessary parties for the restructuring of the land trust’s debts in Chapter XII. It makes more sense to allow the land trust as an entity to proceed under the Act. See Mayo v. Barnett Bank of Pensacola, 448 F.Supp. 250 (N.D.Fla.1978).
Appellant Compass provides no good reason why the Bankruptcy Act should not apply to land trusts. Compass rests on the authority of Associated Cemetery Management, Inc. v. Barnes, 268 F.2d 97 (8th Cir. 1959), which held that an employees’ profit sharing trust was not eligible for bankruptcy relief under § 4(a). Associated Cemetery is not persuasive authority on the issue before the court. The Eighth Circuit considered only that the profit-sharing trust was not a corporation as defined in § 1(8), 11 U.S.C. § 1(8). It gave scant attention to the larger question of whether the profit sharing trust was a person under § 1(23) of which “corporation” is only a subset.[9] A decision holding that a profit sharing trust is not a corporation does not convince us that a land trust, which must avoid corporate status for Chapter XII, cannot be a person.[10]
Finally, there is the history of Chapter XII which, though not directly relevant to the § 1(23) definition which preceded enactment of that chapter, nonetheless illuminates the purposes of the Act. Chapter XII was part of the Chandler Act of 1938, 52 Stat. 840. The Chandler Act provided three methods of business rehabilitation. Chapter X, §§ 101 et seq., 11 U.S.C. §§ 501 et seq., provided for restructuring debt and equity, and was intended for complex financial corporations. Chapter XI §§ 301 et seq., 11 U.S.C. §§ 701 et seq., provided for restructuring unsecured debt only, and was intended for simple businesses. Chapter XII provided for restructuring secured and unsecured debt held by non-corporate real estate businesses, because Congress thought that real estate businesses — especially in Illinois, which had invented the land trust here at issue — presented special problems. H.Rep. 1409, 75th Cong., 1st Sess. 51 (1937). Land trusts are such businesses. We find no good reason to exclude them from the protections of the Bankruptcy Act in force at the time this proceeding commenced.
Affirmed.

. The Bankruptcy Act of 1898 was superseded by the Bankruptcy Code enacted in 1978, but the Code applies only to bankruptcies filed after October 1, 1979. See Central Trust Co. v. Geiger Enterprises,- U.S.-, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982) (per curiam). This proceeding began January 9, 1979. All citations to the statute refer to the Bankruptcy Act of 1898 and Title 11, U.S. Code (1976) unless otherwise indicated.

. Land Trust No. 2 had two beneficiaries at its inception, Marc Broxmeyer and Emily Vernon, both of Miami Beach, Fla. Vernon was named trustee. Under the trust agreement, the beneficiaries have the right to manage and control the property, the right to receive all income from the property and the right to direct the trustee to deal with the property.
The day Land Trust No. 2 was created, it obtained title to the hotels from the Zuckerman Vernon Corporation. Zuckerman Vernon also owned the land under the hotels. The corporation conveyed the land to another entity, Land Trust No. 1. On December 22, 1975, Land Trust No. 1 leased the land at $200,000- per . year, for 99 years, to Vernon and Broxmeyer. They assigned their interest as lessees to Land Trust No. 2. Land Trust No. 2 then subleased the land and leased the improvements for 99 years at $100 per year to Barcelona Associates, a limited partnership now known as Barcelona • Hotel Ltd. On December 31, 1975, Vernon and Broxmeyer sold their beneficial interests in Land Trust No. 2 to Barcelona Associates, receiving in exchange Barcelona Associates’ note for $8.25 million. Barcelona Associates on the same day subleased land and improvements to Barcelona Operating Associates No. 2, a general partnership which included Vernon and Broxmeyer as partners.

. The land and hotel were mortgaged by Zuckerman Vernon Corp. on March 29, 1973, as security for a $4.5 million note to Barnett Winston Investment Trust, which is now known as Compass Investment Group. Zuckerman Vernon gave American Bank & Trust Co. a second *684 lien to secure a $500,000 note in April 1974. American Bank & Trust Co. failed in 1975, and its claim is held by the FD1C.

. There were defaults in payment of principal, interest, real estate taxes and personal property taxes. Land Trust No. 2 did, however, pay substantial sums into escrow accounts for the benefit of Compass.

. Counsel for both parties have informed the court that appeal from the dismissal for want of prosecution awaits only the completion of the record to be submitted to the district court.

. It is not clear from the record whether this lease would supersede the earlier lease to Jo-mar Corp.

. Appellant argues that this case does not pose any danger of the loss of preferences. It is true that the record discloses no action for the recovery of preferences, but that does not foreclose recovery of preferences in the future, either through direct action against a creditor or through disallowance of the creditor’s claim. See In re Cushman Bakery, 526 F.2d 23 (1st Cir. 1975) cert. denied, 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976).

. The rule of Israel-British Bank was followed by the 1979 Code. See 11 U.S.C. § 109(b)(Supp.III 1979) and S.Rep. 989, 95th Cong.2d Sess., 31 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

. Even on its own terms, Associated Cemetery is not applicable to this case. The Eighth Circuit held that a profit sharing trust whose interests could not be transferred was excluded from the definition of “corporation,” and hence not a “person” because Congress had explicitly included only trusts with transferable shares. Unlike the trust in Associated Cemetery, Land Trust No. 2’s beneficial interests can be transferred. They were transferred in 1975. See note 2, supra.

. Other authorities cited by Compass are similarly inapposite. Cantor v. Wilbraham & Monson Academy, 609 F.2d 32 (1st Cir. 1979) decided only that the trustee of a land trust is not eligible for Chapter XII in his personal capacity as a natural person “owning” real estate. Though the First Circuit referred to the “settled rule” that a trust may not proceed under Chapter XII, that issue was not before the court. As authority for its dicta, the First Circuit relied on Associated Cemetery. As demonstrated by the foregoing analysis, we believe that such reliance is not warranted. For the same reason, Walker v. Federal Land Bank, 468 F.Supp. 831 (M.D.Fla.1979), is not persuasive.